IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA WOLFHAWK, : | |
| : | |
| Plaintiff : | |
| v. : | 3:CV-05-1984 |
| : | (CHIEF JUDGE VANASKIE) |
| SCHUYLKILL COUNTY, and : | |
| GERARD J. CAMPBELL, EXECUTIVE : | |
| DIRECTOR, SCHUYLKILL COUNTY : | |
| CHILDREN and YOUTH SERVICES, : | |
| : | |
| Defendants : | |

## M E M O R A N D U M

This matter is before the Court on Plaintiff Melissa Wolfhawk's request for preliminary injunctive relief to restrain the Schuylkill County Children and Youth Services ("SC-CYS") from taking custody of her newborn son on the basis of her husband's 22 year-old sexual assault conviction. The child was born the day after an evidentiary hearing on Plaintiff's preliminary injunction motion was conducted in this Court, but before the evidentiary record was closed. Plaintiff claims that SC-CYS lacks "reasonable and articulable evidence giving rise to a reasonable suspicion" that the infant is in imminent danger of abuse sufficient to warrant removal of the child from her care.

Defendants, Schuylkill County and Gerard J. Campbell, the Executive Director of SC-CYS,[1] observing that pertinent proceedings were commenced in the Schuylkill County Court of

---

[1]This action was initially brought against SC-CYS. By agreement of the parties,
(continued...)

Common Pleas following the birth of Plaintiff's child, argue that this action must be dismissed under Younger v. Harris, 401 U.S. 37 (1971), and its progeny.  Alternatively, Defendants contend that the conduct of SC-CYS staff in taking custody of the newborn child on the basis of a court order obtained after proceedings at which Mrs. Wolfhawk had an opportunity to be heard cannot support a substantive due process claim.

The pending state court proceedings presenting the very issue advanced here – whether there are adequate grounds for the removal of the infant – implicate substantial interests of comity and federalism that militate against exercise of federal court jurisdiction, even though this federal court action was brought before the state court proceeding. Accordingly, Defendants' Younger argument will be sustained.  Even if Younger abstention were not warranted, preliminary injunctive relief would be denied.  Succinctly stated, the conduct of SC-CYS in seeking a court order for immediate custody of the child pending adjudication of a dependency petition under the Pennsylvania Juvenile Act, 42 Pa.C.S.A. § 6301, et seq., does not rise to the level of egregious conduct sufficient to support a substantive due process claim.

## I. BACKGROUND

Plaintiff is the mother of three children.  Her first child, age eight (8), has been in court-ordered placement with SC-CYS since December of 2004.  Her second child, now twenty-one

---

[1](...continued)
Schuylkill County and the SC-CYS Executive Director have been substituted as the Defendants. (Dkt. Entry 20.)

(21) months old, was also removed from Plaintiff's care by court order.  She recently gave birth to her third child on October 18, 2005.  Plaintiff is married to Daishin Wolfhawk, the biological father of her second and third child.  Mr. Wolfhawk is a convicted sexual predator.  In 1983, he pled guilty to the rape of two juvenile females, ages 15 and 16, and the sodomy and attempted sodomy of his juvenile daughter.  Mr. Wolfhawk spent ten (10) years in jail on these charges.

Plaintiff commenced this action on September 30, 2005.  She alleged that she was in her eighth month of pregnancy, had recently been involved in a motor vehicle accident, and could go into labor at any time.  She sought a temporary restraining order, enjoining SC-CYS from:

> A.  Dictating to Plaintiff how, when and where she procure prenatal care;
> B.  Harassing or threatening to seize Plaintiff's unborn baby; or
> C.  Attempting to unlawfully seize Plaintiff's baby upon its birth.

(Proposed Temporary Restraining Order accompanying Plaintiff's Motion for Temporary Restraining Order, Dkt. Entry 2.)  In the Brief filed in support of the request for immediate injunctive relief, Plaintiff argued that "[s]hould Defendant make good on its threat to take custody of Ms. Wolfhawk's infant immediately after his birth <u>without benefit of a dependency proceeding</u>, Ms. Wolfhawk would be deprived of fundamental rights."  (Brief in Support of Motion for Temporary Restraining Order, Dkt. Entry 3, at 10; emphasis added.)  Notably, Plaintiff did not seek to restrain SC-CYS from commencing appropriate state court proceedings to determine whether the newborn should be removed from her care.

A telephonic conference on the request for immediate injunctive relief was conducted on

the afternoon of September 30, 2005.  During the conference, the parties agreed to the entry of a temporary restraining order that enjoined SC-CYS from contacting plaintiff "in any way about her pregnancy until October 15, 2005," and required Plaintiff to notify SC-CYS of her child's birth date and place within 24 hours of the birth.  An evidentiary hearing on the motion for a preliminary injunction was scheduled for October 17, 2005.

On the date of the hearing, Plaintiff tendered a different proposed Preliminary Injunction Order.  Plaintiff now sought not only to restrain SC-CYS from attempting to remove the expected child from her custody, but also to enjoin SC-CYS "from initiating any action under the Juvenile Act with the goal of removing Plaintiff's expected child from her custody . . . ."  (Proposed Preliminary Injunction Order, Dkt. Entry 10, at 2.)  Thus, whereas Plaintiff initially sought to prevent removal of the infant "without benefit of a dependency proceeding," she now sought to prevent SC-CYS from commencing a dependency proceeding.

In support of this request for such extraordinary equitable relief, Plaintiff tendered the Declaration of Laura Ann McCloskey, Ph.D., a psychologist.  Dr. McCloskey opined, <u>inter alia</u>, that Mrs. Wolfhawk's husband and father of the child at issue did not pose a substantial risk of harm to the infant.  A key assumption underlying Dr. McCloskey's opinion was that Mr. Wolfhawk's sexual assault record did not include immediate family members as victims.

Mr. Wolfhawk testified at the preliminary injunction hearing.  On cross-examination, Defendants produced a New York City Department of Probation presentence investigation

report indicating that Mr. Wolfhawk, in addition to raping two teenage girls, had sexually assaulted his daughter over a number of years.  Although Mr. Wolfhawk refused to acknowledge that he had sodomized his daughter, asserting that he had a positive relationship with her, Defendant's established that Mr. Wolfhawk had pled guilty to a charge of sodomy involving her.  The presentence investigation report also suggested that Mr. Wolfhawk had sexually abused his four-year old son.  Following the evidentiary hearing, Plaintiff withdrew Dr. McCloskey's Declaration.

The thrust of Plaintiff's argument has concerned the use of her husband's sexual assault record by SC-CYS to remove her children from her care.  The evidence presented at the hearing, however, showed that there are a number of troubling factors that have animated the actions of SC-CYS.  Furthermore, the evidence indicated that Plaintiff has been unwilling to comply with court-approved requirements for Plaintiff to regain custody of her children.

Mrs. Wolfhawk's oldest child had been placed in SC-CYS custody in 2004 with a goal of family reunification.  A Family Service Plan developed by SC-CYS and approved by the Schuylkill County Court required Mrs. Wolfhawk to undergo drug and alcohol testing and treatment.  The apparent premise for this condition was information that Ms. Wolfhawk had reported to a consulting psychologist that indicated a past drug abuse history involving cocaine,

crack cocaine, and methamphetamine.[2]  Ms. Wolfhawk admits that she did not pursue the required drug and alcohol testing and treatment, contending that it was not necessary.

Mrs. Wolfhawk's second child, a daughter, has also been taken from her care by court process.  Removal of this child followed a report from SC-CYS to its counterpart in Lancaster County.  SC-CYS indicated that Mrs. Wolfhawk's daughter, then age two months, was in possible imminent risk for sexual abuse in light of Mr. Wolfhawk's sexual assault history, including sexual abuse of his children from an earlier marriage.  Ms. Wolfhawk took the child to upstate New York, evidently attempting to avoid the loss of her daughter.  Ultimately, the daughter ended up in foster care in Maryland.  Mrs. Wolfhawk testified that a custody dispute is now being waged in Maryland.

At the evidentiary hearing, Greta Kroh, a case worker in the SC-CYS placement unit, testified that the agency had no plans to seize the newborn infant without a court order.  She also testified, however, that SC-CYS intended to petition for custody of the child upon his birth.  She explained that the decision to petition for custody was premised not only upon Mr. Wolfhawk's criminal record that included sexual abuse of his own child, but also Ms. Wolfhawk's past self-report of drug abuse and her failure to complete any of the goals on the court-approved Family Service Plan, except for undergoing a mental health evaluation.

---

[2]Although a report of a consulting psychologist indicates that Mrs. Wolfhawk had admitted to a drug abuse history, Mrs. Wolfhawk disclaimed having provided that information to the psychologist.

At the conclusion of the evidentiary presentation, counsel for Plaintiff requested additional time to supplement the record with a declaration of a law enforcement officer, who would corroborate Mr. Wolfhawk's testimony that he had been used in an undercover informant capacity, and to confer with Dr. McCloskey concerning the revelations made during the hearing concerning Mr. Wolfhawk's history as a sexual predator. Plaintiff also requested additional time to file a memorandum of law. The parties agreed that the temporary restraining order issued on September 30, 2005 should be extended for an additional ten days, until October 27, 2005. That is, SC-CYS agreed not to have any contact with Plaintiff, and Plaintiff agreed to notify SC-CYS of the place and time of the child's birth. Nothing in the party's agreement, however, prevented SC-CYS from going to state court to obtain custody of the infant.

Plaintiff gave birth to her son on the day following the evidentiary hearing, October 18, 2005. The child was born, not in Schuylkill County, but in Chester County, Pennsylvania. Plaintiff intended to take up residence in a community in Maryland, a fact not disclosed during the preliminary injunction hearing.

SC-CYS petitioned the Court of Common Pleas of Schuylkill County for emergency custody of the infant on Wednesday, October 19, 2005. Following a hearing, during which counsel for Ms. Wolfhawk participated by telephone, the agency was granted custody. A petition requesting that the newborn be adjudicated dependent was filed in the Court of Common Pleas of Schuylkill County on October 20, 2005.

A "72-Hour Detention" hearing was conducted by the state court on October 21, 2005, in accordance with 42 Pa.C.S.A. § 6332(a). Ms. Wolfhawk attended the hearing and testified on her own behalf. A guardian ad litem appeared on behalf of the infant and participated in the hearing, taking the position that temporary removal of the child from Ms. Wolfhawk was warranted. At the conclusion of the hearing, the court determined that, in light of Plaintiff's failure to follow through with regard to reunification with her eight-year old son, the allegations of Plaintiff's past drug abuse, the absence of the father from the hearing, his record as a sexual predator, and the obvious close contact between Plaintiff and her husband, the infant "at this point is without proper parental care or control and is in risk of imminent danger of physical and/or emotional injury." (Transcript of 72-Hour Detention Hearing, Dkt. Entry 28, at 91.) A hearing on the dependency petition is scheduled for October 31, 2005.

On October 24, 2005, the parties timely supplemented the record in this matter with the declaration of a law enforcement agent attesting to Mr. Wolfhawk's use as a confidential informant, an affidavit of Defendant Gerald J. Campbell, and a transcript of the 72-Hour Detention hearing conducted in Schuylkill County. Both parties also filed memoranda of law. The motion for preliminary injunction is now ripe for disposition.

## II.   DISCUSSION

### A.   Younger Abstention

Defendants argue that "[t]he *Younger* abstention doctrine as applied to state juvenile

8

dependency proceedings through <u>Moore</u> [v. Sims, 442 U.S. 415 (1979),] clearly requires this Court defer to the pending state juvenile proceedings with respect to the Child and abstain from further consideration of Plaintiff's Complaint and the relief requested thereunder."  (Brief in Opposition to Motion for Preliminary Injunction, Dkt. Entry 21, at 6.)  In <u>Moore</u>, the Court stated that child abuse proceedings implicated matters of important state concern and that it was "unwilling to conclude that state processes are unequal to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation."  442 U.S. at 435.

Our Court of Appeals has explained that there are three requirements for <u>Younger</u> abstention:

> (1) There must be an ongoing state judicial proceeding to which the federal plaintiff is a party and with which the federal proceeding will interfere, (2) The state proceedings must implicate important state interests, and (3) The state proceedings must afford an adequate opportunity to raise the claims.

<u>Yang v. Tsui</u>, 416 F.3d 199, 201 (3d Cir. 2005).

Plaintiff does not contest the existence of each of these conditions.  It is obvious that an injunctive decree in this case would interfere with the state judicial processes commenced on October 19, 2005.  It is also clear that the state proceedings implicate important state interests.[3]

---

[3] <u>Moore</u>, 442 U.S. at 435 ( "Family relations are a traditional area of state concern."); <u>O'Neill v. City of Phila.</u>, 32 F.3d 785, 792 (3d Cir. 1994) ("Prior Supreme Court decisions have
(continued...)

Finally, Plaintiff does not dispute that the state court proceedings afford a full opportunity to raise the claims presented here.  Indeed, the issue presented here is indistinguishable from the question that must be addressed by the state court: whether there exist adequate grounds to remove the child from Plaintiff's custody.

Plaintiff argues, however, that Younger abstention is inappropriate because proceedings of substance on the merits have taken place in this Court prior to the initiation of the state court proceedings.  Plaintiff cites, inter alia, Hicks v. Miranda, 422 U.S. 332 (1975).  In Hicks, the Younger doctrine was applied in the context of a federal court proceeding initiated in advance of a conflicting state court proceeding.  The Court cautioned, however, that if "any proceedings of substance on the merits have taken place in the federal court" before initiation of the state proceeding, abstention may be inappropriate.

What constitutes "proceedings of substance on the merits" is not entirely clear.  In Doran v. Salem Inn, Inc., 422 U.S. 922, 929 (1975), the Court determined that Younger abstention was appropriate when the state court action was brought following the federal courts denial of a temporary restraining order, but before the federal court had decided whether a preliminary injunction or declaratory relief was appropriate.  The Court reasoned that "the federal litigation

---

³(...continued)
held that the states have a substantial interest . . . in administering child custody proceedings . . . ."); Powell v. Hoover, 956 F. Supp. 564, 569 (M.D. Pa. 1997) ("[T]he Supreme Court held in Moore that custody proceedings implicate an important state interest.").

was in an embryonic stage and no contested matter had been decided." Id. at 929.  In Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 238 (1984), the court held that issuance of a permanent injunction constituted a proceeding of substance, precluding Younger abstention based on the later-filed state court action.

In this case, Plaintiff initiated this federal court action before any state court process could have been brought.  She filed the action in anticipation of the birth of her child, arguing that SC-CYS had no authority to act until the child was born.  Furthermore, between the filing of the original motion for a temporary restraining order and the hearing conducted on October 17, 2005, the nature of the relief sought by plaintiff changed dramatically.  Originally, Plaintiff sought to restrain Defendants from seizing the child without benefit of a dependency proceeding.  In this regard, state law authorizes taking custody of a child without a court order "if there are reasonable grounds to believe that the child . . . is in imminent danger from his surroundings, and that his removal is necessary."  42 Pa.C.S.A. § 6324(3).  It appeared to this Court that Plaintiff was arguing that such grounds for seizure of the child did not exist.  When she appeared in this Court for the preliminary injunction hearing on October 17, Plaintiff sought to prevent Defendants from even seeking a state court order authorizing seizure of the child.

This transformation in the relief sought is significant in determining the applicability of Younger.  At its inception, this case did not seek to interfere with state court processes. It has now evolved to a direct attack on state court authority and autonomy.

11

"There is no fixed requirement in the law that a state judicial proceeding must have been initiated before the federal case was filed for abstention to be appropriate, and the court should examine what is actually taking place in both settings in deciding whether to abstain." <u>Aaron v. Target Corp.</u>, 357 F.3d 768, 775 (8th Cir. 2004). In this case, it appears that Plaintiff initiated federal court litigation to preempt state court processes. To hold that a federal court may adjudicate the sufficiency of the grounds for a state agency to seek custody of a child simply because Plaintiff commenced litigation in federal court before any state court process <u>could have been brought</u> would "trivialize the principles of <u>Younger</u> . . . ." <u>Hicks</u>, 422 U.S. at 350.

In any event, it cannot be said that there were "proceedings of substance on the merits" that had been concluded before the state court action was brought. Significantly, the temporary restraining order issued in this matter was not the result of any court-determination of contested issues. Instead, the order merely implemented the parties' agreement. Moreover, the order in no way restrained Defendants from taking appropriate action in the state court system. Indeed, all that Plaintiff gained from the Order was that she would not be bothered by SC-CYS. Thus, the temporary restraining order was neither on the merits, nor contested. Furthermore, the evidentiary record on the preliminary injunction motion was still incomplete when the state court proceedings were brought. Indeed, the record had remained open at Plaintiff's request. Thus, at the time the state court action was brought, this Court had made no rulings on the merits of Plaintiff's claims.

Under these circumstances, it would be inappropriate to deny application of the <u>Younger</u> doctrine. Because resolution of the issues presented in this case would impermissibly interfere with the ongoing state proceedings involving matters of substantial state concern, dismissal of this action is warranted.

### B.     Preliminary Injunction Motion

Even if <u>Younger</u> abstention were not compelled, preliminary injunctive relief would be denied because Plaintiff failed to demonstrate a reasonable probability of success on the merits of her substantive due process claim. The Supreme Court has held that where abusive government action is alleged, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846 (1998). As the Third Circuit has explained in a context similar to that presented here, in order to generate liability, government action "must be so ill-conceived or malicious that it 'shocks the [judicial] conscience.'" <u>Miller v. City of Philadelphia</u>, 174 F.3d 368, 375 (3d Cir. 1999) (internal citation omitted). "Because conduct that 'shocks the conscience' under one set of circumstances may not have the same effect under a different set of circumstances, the standard of culpability for a substantive due process violation can vary depending on the situation." <u>Rivas v. City of Passaic</u>, 365 F.3d 181, 195 (3d Cir. 2004). "It is a flexible standard depending on the facts of each case." <u>Robert S. v. City of Philadelphia</u>, No. Civ. A. 97-6710, 2000 WL 341565, at *4 (E.D. Pa. March 30, 2000.)

By any definition, whether it be "arbitrary and capricious," "grossly negligent," "egregious," or "malicious," the conduct of SC-CYS in seeking court intervention to authorize assuming custody of the baby fails to shock this Court's judicial conscience.  Two of Plaintiff's children have been removed from her care following court proceedings.  She has not complied with the Family Service Plan.  Her husband has a horrendous past as a sexual offender involving children, including his own child.  Plaintiff moved to Maryland without informing SC-CYS, even though her oldest child remains in foster care in Pennsylvania.  There is nothing conscience-shocking about asking a state court to determine whether the infant should be removed from the mother.  As indicated above, the court-appointed guardian ad litem for the baby believed that temporary removal was appropriate.

Plaintiff asserts that the ruling in Croft v. Westmoreland County Children and Youth Services, 103 F.3d 1123 (3d Cir. 1997), governs this case. In Croft, the Third Circuit decided that "a state has no interest in protecting children from their parents unless it has some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." Id.  Significantly, this test was framed in the context of action that did not involve state court approval.  Defendants in Croft had coerced a father to leave the family home or the child would be placed in foster care.  This naked abuse of government authority was not subject to prior judicial scrutiny.  In this case, by way of contrast,

Defendants went to the state court first, and Plaintiff was afforded an opportunity to be heard and to challenge the evidence.  In Croft, the Court established an evidentiary standard that the state must satisfy in order to take custody of the child without a pre-deprivation hearing.  Croft has no application here.  To hold otherwise would subject state court child abuse proceedings to second-guessing by a federal court on the ground that the evidence was insufficient to support the dependency petition in the first place.  Nothing in Croft supports such a result.

In this case, SC-CYS was granted custody of Plaintiff's child only after the state court afforded all interested parties, including the guardian ad litem, an opportunity to be heard.  It is not within the purview of this Court to address the matter of evidentiary sufficiency.  Rather, this Court needs only to determine whether the request to the state court to remove the child "shocks the conscience," and it does not.  Accordingly, Plaintiff is not entitled to the extraordinary injunctive relief that she sought.

## III.   CONCLUSION

For the reasons set forth above, the preliminary injunction motion will be denied, and this action will be dismissed, without prejudice.  An appropriate Order follows.

                                              **s/ Thomas I. Vanaskie**
                                              Thomas I. Vanaskie, Chief Judge
                                              Middle District of Pennsylvania

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA WOLFHAWK, : | |
| : | |
| Plaintiff : | |
| : | |
| v. : | 3:CV-05-1984 |
| : | (CHIEF JUDGE VANASKIE) |
| SCHUYLKILL COUNTY, and : | |
| GERARD J. CAMPBELL, EXECUTIVE : | |
| DIRECTOR, SCHUYLKILL COUNTY : | |
| CHILDREN and YOUTH SERVICES, : | |
| : | |
| Defendants : | |

O R D E R

**NOW, this 27th DAY OF OCTOBER, 2005,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for a Preliminary Injunction (Dkt. Entry 2) is **DENIED**.

2. This action is **DISMISSED, WITHOUT PREJUDICE**.

3. The Clerk of Court is directed to mark this matter **CLOSED**.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania